IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WALGREEN CO., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17-cv-2120 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| PANASONIC HEALTHCARE CORPORATION OF NORTH AMERICA, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

In its Complaint, Plaintiff Walgreen Co. ("Plaintiff") brings claims against Defendant Panasonic Healthcare Corporation of North America ("Defendant") for breach of contract (Count I), negligence (Count II), and breach of warranty (Count III). Currently before the Court is Defendant's motion [16] to dismiss Count I of Plaintiff's Complaint for failure to state a claim. For the reasons explained below, Defendant's motion [16] is denied. This case remains set for status hearing on March 20, 2018 at 9:00 a.m.

**I.    Background[1]**

   **A.    The Parties**

Plaintiff is a drugstore chain operating retail pharmacy locations across the United States. [1-1 ¶ 7.]  In addition to its retail locations, Plaintiff operates four specialty pharmacies, including one in Beaverton, Oregon. [*Id.*]  These specialty pharmacies handle and dispense specialty pharmaceuticals used to treat chronic, high-cost, or rare diseases. [*Id.* ¶ 1.]  Many such specialty pharmaceuticals must be stored in specific climate-controlled environments to prevent

---

[1] For purposes of the motion to dismiss, the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

adverse effects on the drugs themselves. [*Id.*] If a specialty pharmaceutical is not stored in the proper temperature range, the pharmaceutical's efficacy may be compromised, in which case Plaintiff cannot dispense it to a patient. [*Id.*]

Defendant sells products and services, including ultra-low and cryogenic freezers, cell culture incubators, laboratory and biomedical refrigerators and freezers, and portable autoclaves, that are used in the life science, pharmaceutical, biomedical, and research markets. [*Id.* ¶ 8.] One of Defendant's products is the "LabAlert System." [*Id.* ¶ 13.] The LabAlert System is marketed as a product that allows remote monitoring of freezer temperatures and provides alarm notifications in the event that a freezer's temperature exceeds a specific range. [*Id.* ¶¶ 12–13, 34.]

### B. The Hosted Services and License Agreement

On April 2, 2015, Plaintiff and Defendant entered into a Hosted Services and License Agreement (the "Agreement") under which Defendant agreed to supply, install, and configure the LabAlert monitoring system so that Plaintiff could remotely monitor the temperature of the walk-in cooler at Plaintiff's Beaverton, Oregon specialty pharmacy. [*Id.* ¶¶ 2, 9–12.]

Section 14 of the Agreement contains the indemnification provisions agreed to by Plaintiff and Defendant. [See 1-1, Exhibit A, § 14.] Section 14.1(a), governing general indemnification by Defendant,[2] reads as follows:

> General Indemnity. [Defendant] will indemnify, defend and hold harmless (collectively, "**indemnification**" or "**indemnify**") [Plaintiff], its Affiliates, and their respective officers, directors, employees and agents ("**[Plaintiff] Indemnified Parties**") from and against any and all demands, judgments (including applicable pre-judgment and post-judgment interest, if any), awards, losses, damages, costs, penalties, expenses, claims and liabilities, including reasonable attorneys fees, witness fees and court costs,

---

[2] Section 14.1 also contains a provision for "Infringement Indemnity" by Defendant, which is set out in Section 14.1(b). This provision is not implicated by this action.

2

and any other losses and liabilities of any kind or nature whatsoever (collectively, "**Damages**") of, or awarded to, or settled with (in accordance with Section 14.3 (Indemnification Procedures), third parties in third-party claims or actions, and the costs of [Plaintiff] in enforcing this indemnification obligation. In each case arising out of any of the following: (i) the negligent acts or omissions, or intentional misconduct, of [Defendant], its subcontractor, or the [Defendant] Personnel under any Agreement; (ii) any breach by [Defendant] of any Agreement; and (iii) claims arising out of or relating to any Agreement brought by [Defendant] personnel, [Defendant]'s subcontractors, or [Defendant]'s subcontractor personnel.

[Defendant] will indemnify, defend and hold harmless the [Plaintiff] Indemnified Parties from and against any and all Damages, and the costs of [Plaintiff] in enforcing this indemnification obligation, arising out of or in connection with any of the following: (i) bodily harm, death and/or loss and damage to real and tangible personal property caused by the negligence or willful misconduct of [Defendant] or any [Defendant] Affiliate or subcontractor, or by their respective personnel; and (ii) [Plaintiff]'s and/or its Affiliates' compliance with the requirements of applicable data protection laws following a breach by [Defendant], or any of its subcontractors or their respective personnel of Section 9 (Data Security).

[*Id.* § 14.1(a).] Section 14.2, in turn, governs indemnification by Plaintiff, and reads as follows:

Indemnification by [Plaintiff]. [Plaintiff] will indemnify [Defendant] Contractor and its Affiliates and subcontractors, and their respective officers, directors, employees, agents, representatives, successors and assigns (collectively, the "**[Defendant] Indemnitees**") from and against any and all Damages of, or awarded to, or settled with (in accordance with Section 14.3 (Indemnification Procedures), third parties in third-party claims or actions, and the costs of [Defendant] in enforcing this indemnification obligation, in each case arising out of any of the following: (i) the negligent acts or omissions, or intentional misconduct, of [Plaintiff] or its employees or personnel under any Agreement; (ii) any breach by [Plaintiff] of any term of this Agreement; and (iii) bodily harm, death and/or loss and damage to real and tangible personal property caused by the negligence or willful misconduct of [Defendant] or any [Defendant] Affiliate or subcontractor, or by their respective personnel.

[*Id.* § 14.2.]

Other relevant sections of the Agreement include the sections governing indemnification procedures (Section 14.3), limitations on liability (Section 15), and attorneys' fees (Section 17.12). Section 14.3 begins as follows: "If a Party makes a claim for indemnifications under this <u>Section 14</u> (Indemnification), such indemnified Party shall give written notice to the indemnifying Party promptly and in no event later than thirty (30) days after learning of a third party claim that is subject to indemnification ("**Indemnified Claim**") * * *." [*Id.* § 14.3.] It then sets out the procedures for notice of an Indemnified Claim, the indemnifying Party's right to assume the conduct and defense of an Indemnified Claim, the indemnified Party's requirement to provide reasonable assistance in defense of an Indemnified Claim, and the indemnified Party's right to consent to a settlement of an Indemnified Claim. [*Id.*]

Section 15 of the Agreement includes two limitations on liability. The first is a waiver of consequential, special, indirect, incidental, punitive, or exemplary damages. [*Id.* § 15.1.] The second is a direct damages cap limiting damages for claims asserted against one party by the other party under the Agreement to five times the total fees paid or payable in the prior twenty-four months. [*Id.* § 15.2.] These limitations do not apply, however, for (i) damages arising in connection with either party's indemnification obligations; (ii) damages related to either party's willful misconduct or gross negligence; and (iii) damages related to breaches of either party's confidentiality obligations. [*Id.* §§ 15.1, 15.2.] Finally, Section 17.12 provides that "[t]he prevailing party shall be entitled to recover its costs and reasonable attorneys' fees and expenses incurred in connection with any action or proceeding between [Defendant] and [Plaintiff] arising out of or related to any Agreement." [*Id.* § 17.12.]

### C. The Beaverton Specialty Pharmacy Walk-In Cooler Failure

On or around June 8, 2016, the walk-in cooler at Plaintiff's Beaverton specialty pharmacy began to fail, and the freezer temperature rose to a level that should have triggered an alarm notification through the LabAlert System. [1-1 ¶ 17.] Plaintiff did not receive such a notification, however, and as a result the specialty pharmaceuticals stored at that facility became unusable. [*Id.* ¶ 20.] Plaintiff alleges that Defendant's technician or subcontractor failed to properly install and/or configure the LabAlert System, which led to this notification failure. [*Id.* ¶¶ 2, 19.] Plaintiff claims that the losses caused by this LabAlert System failure total approximately $11.5 million. [*Id.* ¶ 22.] Plaintiff demanded that Defendant compensate it for this loss, but Defendant refused to indemnify Plaintiff. [*Id.* ¶ 28.]

Plaintiff filed suit against Defendant in Illinois state court on February 15, 2017, bringing claims for breach of the Agreement through Defendant's refusal to indemnify Plaintiff for its losses (Count I); negligence for failure to properly install and configure the LabAlert System (Count II); and breach of the express warranty contained in Section 12 of the Agreement regarding Defendant's services and product (Count III). Defendant removed the case to federal court, [see 1], and thereafter filed the instant motion to dismiss Count I of the Complaint for failure to state a claim, [see 16].

## II. Legal Standard

To survive a Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly,* 550 U.S. at 558. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

**III. Analysis**

Defendant moves to dismiss Plaintiff's breach of contract claim (Count I) for failure to state a claim. Defendant argues that its indemnification obligation under the Agreement does not apply to first-party claims asserted by Plaintiff itself, but it instead applies only to claims asserted by third parties. Therefore, according to Defendant, Plaintiff's breach of contract claim fails as a matter of law.

The parties agree that the Agreement's interpretation is governed by Illinois law. See [1-1, Exhibit A, § 17.11]; see also *Vencor, Inc. v. Webb*, 33 F.3d 840, 844 (7th Cir. 1994) (enforcing a contract's choice of law provision). In Illinois, "[t]he primary objective in construing a contract is to give effect to the intent of the parties." *Gallagher v. Lenart*, 874 N.E.2d 43, 58 (Ill. 2007). The language of a contract is the best indication of that intent. *Id.* (citation omitted); see also *Right Field Rooftops, LLC v. Chi. Cubs Baseball Club, LLC*, 870 F.3d 682, 690 (7th Cir.

6

2017) (applying Illinois contract law) ("A court must initially look to the language of a contract alone, as the language, given its plain and ordinary meaning, is the best indication of the parties' intent."). If the contract's language is facially unambiguous, its words "must be given their plain, ordinary, and popular meaning." *Cent. Ill. Light Co. v. Home Ins. Co.*, 821 N.E.2d 206, 213 (Ill. 2004). If the contract's language is susceptible of more than one meaning, it is ambiguous and the court can consider extrinsic evidence to determine the parties' intent. *Right Field Rooftops*, 870 F.3d at 690. All portions of a contract should be "construed as a whole, viewing each part in light of the others." *Gallagher*, 874 N.E.2d at 58 (citation omitted). In so construing a contract, a court should "attempt to give meaning to every provision of the contract and avoid a construction that would render a provision superfluous." *Land of Lincoln Goodwill Indus., Inc. v. PNC Fin. Servs. Grp., Inc.*, 762 F.3d 673, 679 (7th Cir. 2014).

Upon review of the Agreement,[3] the Court concludes that Plaintiff has sufficiently stated a claim for breach of contract because it has plausibly alleged that Defendant is required to indemnify Plaintiff for damages to its real and personal property. In Illinois, a contractual indemnification clause may be "broad enough to encompass claims for both first-party and third-party claims for indemnity." *Water Tower Realty Co. v. Fordham 25 E. Superior, L.L.C.*, 936 N.E.2d 1127, 1134 (Ill. App. Ct. 2010); see also *Am. Nat'l Bank & Tr. Co. of Chi. v. Regional Transp. Auth.*, 125 F.3d 420, 433–34 (7th Cir. 1997) (recognizing that an indemnification clause can cover both first- and third-party claims); *ImagePoint, Inc. ex rel. Martin v. BFS Retail & Commercial Operations, LLC*, 2014 WL 7335167, at *8 (N.D. Ill. Dec. 19, 2014) ("Illinois law does not require that indemnification suits arise solely in the context of third-party claims.").

---

[3] The Court may consider the Agreement at the motion to dismiss stage because it is attached as an exhibit to Plaintiff's Complaint. "In deciding a Rule 12(b)(6) motion, the court may consider documents attached to a complaint, such as contract documents, without converting the motion into one for summary judgment." *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639–40 (7th Cir. 2015) (citing Fed. R. Civ. P. 10(c)).

But "whether a particular indemnification agreement actually does cover claims by a party depends on the language of the agreement." *Allied Waste Transp., Inc. v. Bellemead Dev. Corp.*, 2014 WL 4414510, at *7 (N.D. Ill. Sept. 8, 2014); see also *Water Tower Realty*, 936 N.E.2d at 1133–34 ("A party wishing to narrow an indemnification clause to third-party damage is obligated to limit the scope of the clause expressly; and absent such express limitation, indemnification clauses may apply to damage suffered by the contracting parties themselves.") (internal quotation marks and citation omitted).

Section 14.1(a) of the Agreement governs general indemnity by Defendant and contains two paragraphs. The first paragraph states that:

- Defendant "will indemnify, defend and hold harmless" Plaintiff;
- "from and against any and all" damages as that term is defined;[4]
- "of, or awarded to, or settled with (in accordance with Section 14.3 (Indemnification Procedures)) third parties in third-party claims or actions,"
- "and the costs of [Plaintiff] in enforcing this indemnification obligation,"
- arising out of the following: "(i) the negligent acts or omissions, or intentional misconduct, of [Defendant], its subcontractor, or the [Defendant] Personnel under any Agreement; (ii) any breach by [Defendant] of any Agreement; and (iii) claims arising out of or relating to any Agreement brought by [Defendant] personnel, [Defendant's] subcontractors, or [Defendant's] personnel."

[1-1, Exhibit A, § 14.1(a).] Thus, Defendant's indemnity obligation arising out of this first paragraph is explicitly limited to claims involving damages of third parties only.

---

[4] Damages are defined as "demands, judgments (including applicable pre-judgment and post-judgment interest, if any), awards, losses, damages, costs, penalties, expenses, claims and liabilities, including reasonable attorneys' fees, witness fees and court costs, and any other losses and liabilities of any kind or nature whatsoever." [1-1, Exhibit A, § 14.1(a).]

The second paragraph of Section 14.1(a) contains parallel language but omits the reference to third-party claims or actions. The second paragraph states that:

- Defendant "will indemnify, defend and hold harmless" Plaintiff;
- "from and against any and all Damages," as that term is defined;
- "and the costs of [Plaintiff] in enforcing this indemnification obligation,"
- arising out of the following: "(i) bodily harm, death and/or loss and damage to real and tangible personal property caused by the negligence or willful misconduct of [Defendant] or any [Defendant] Affiliate or subcontractor, or by their respective personnel; and (ii) [Plaintiff's] and/or its Affiliates' compliance with the requirements of applicable data protection laws following a breach by [Defendant] * * *."

[1-1, Exhibit A, § 14.1(a).] By its plain terms, Section 14.1 contains two separate indemnification obligations, one of which is limited by the phrase "third parties in third-party claims or actions," and one of which is not limited by this phrase and thus could include first- or third-party claims. Plaintiff has premised its breach of contract claim on the second paragraph of Section 14.1(a) and Defendant's refusal to indemnify Plaintiff for its property damage allegedly caused by Defendant's negligence. [1-1 ¶¶ 23–30.] As such, Plaintiff's claim is not barred by the plain language of the Agreement. See *Water Tower Realty*, 936 N.E.2d at 1133–34 (parties must signify their intent to limit an indemnification clause by doing so expressly); *Gallagher*, 874 N.E.2d at 58 (the language of a contract is the best indication of the parties' intent).

Defendant argues that the parties have in fact expressly limited indemnification to third-party claims. Specifically, Defendant argues that "[b]y its plain terms, the first sentence of Section 14.1(a) is limited to third-party claims," [17 at 9], and "where the first sentence of Section 14.1(a) clearly states that that section only applies to 'third-party' claims, there would be

9

no reason to repeat that language in each paragraph," [24 at 3]. This argument ignores the repetition of several terms in both the first and second paragraphs of Section 14.1(a), however: both paragraphs repeat the "indemnify, defend and hold harmless" language, the "from and against any" damages language, the "costs of [Plaintiff] in enforcing this indemnification obligation" language, and the "arising out of or in connection with any of the following" language. [1-1, Exhibit A, § 14.1(a).] In fact, the only language that is *not* repeated in the second paragraph is the "third parties in third-party claims or actions" limitation, indicating that this limitation does not apply to the situations outlined in the second paragraph. "[W]hen parties to the same contract use such different language to address parallel issues * * * it is reasonable to infer that they intend this language to mean different things." *Right Field Rooftops*, 870 F.3d at 690 (quoting *Taracorp, Inc. v. NL Indus., Inc.*, 73 F.3d 738, 744 (7th Cir. 1996) (applying Illinois law)). It is thus reasonable to infer that the absence of an express third-party limitation in this second paragraph means that Defendant's indemnification obligation pursuant to that paragraph includes both first- and third-party claims.[5]

Defendant further argues that an interpretation of Section 14.1(a) that allows for first-party indemnification claims of Plaintiff by Defendant "is unreasonable because it creates a one-sided first-party indemnification obligation that is contrary to the terms of the Agreement." [24 at 4.] In other words, because the parties agree that Section 14.2 entirely limits indemnification of Defendant by Plaintiff to third-party claims, [see 1-1, Exhibit A, § 14.2], Defendant argues Section 14.1(a) must be read to mirror that complete limitation to third-party claims as well. As

---

[5] In response to Plaintiff's argument that Defendant's interpretation of the Agreement would render the second paragraph of Section 14.1 superfluous, Defendant argues that Plaintiff's interpretation would instead achieve that result because "[a] purported right to 'indemnification' for [Plaintiff's] own damages caused by [Defendant's] alleged negligence is itself superfluous and redundant of a claim for negligence based on these damages." [24 at 6–7.] However, because Illinois courts do recognize this type of right to indemnification, see *Water Tower Realty*, 936 N.E.2d at 1133–34, the Court agrees that Defendant's interpretation of Section 14.1(a) more readily makes the second paragraph of that subsection redundant.

stated above, though, the differences in language between Section 14.1 and Section 14.2 must be given effect. *Right Field Rooftops*, 870 F.3d at 690. Section 14.2 contains one paragraph that explicitly limits indemnification by Plaintiff to damages "of, or awarded to, or settled with (in accordance with Section 14.3 (Indemnification Procedures)), third parties in third-party claims or actions." [1-1, Exhibit A, § 14.2.] This same language appears in the first paragraph of Section 14.1 and is absent from the second paragraph of Section 14.1. This reasonably indicates that the parties did not intend for that limitation to apply to claims that are subject to the second paragraph of Section 14.1.

Defendant's arguments regarding Section 14.1 in conjunction with the other sections of the Agreement similarly fail to change the result here. As Defendant correctly notes, the Court must construe the Agreement as a whole, "viewing each part in light of the others." *Gallagher*, 874 N.E.2d at 58; see also *ImagePoint*, 2014 WL 7335167, at *8 (construing an indemnification provision to cover both first-party and third-party claims where the agreement did "not contain additional provisions 'which unmistakably relate to third-party claims'"). Defendant argues that construing Section 14.1(a) in light of (1) Section 14.3, governing indemnification procedures, and (2) Sections 15 and 17.12, governing limitations of liability and attorneys' fees respectively, demonstrates that the parties have expressly limited Section 14.1 to third-party claims and have excluded first-party claims from Defendant's obligations.

Defendant's first argument regarding Section 14.3 does not change the result here. Section 14.3 indeed contains many provisions that would not make sense when applied to first-party claims, including provisions for notice, assumption of an indemnified claim's defense by the indemnifying party, and the requirement that an indemnified party assist in the defense of the indemnified claim. See [1-1, Exhibit A, § 14.3]; see also *Open Kitchens, Inc. v. Gullo Int'l Dev.*

*Corp.*, 466 N.E.2d 1313, 1315 (Ill. App. Ct. 1984) (concluding that the broad indemnity provision in a contract was limited to third-party claims because the next provision, imposing a duty to defend on the indemnifying party, "indicates that the indemnity was intended to arise only in the context" of third-party claims). But Section 14.3 begins as follows: "If a Party makes a claim for indemnifications under this Section 14 (Indemnification), such indemnified Party shall give written notice to the indemnifying Party promptly and in no event later than thirty (30) days after learning of a third party claim that is subject to indemnification ("**Indemnified Claim**") * * *." [1-1, Exhibit A, § 14.3.] Contrary to Defendant's assertions, Section 14.3 by its terms does not apply to every claim for indemnification under Section 14, but only to third-party claims that are subject to indemnification; the second clause of the sentence, defining an "Indemnified Claim," limits the first clause of the sentence, referring to Section 14 as a whole. Such an express limitation distinguishes this situation from the cases cited by Defendant, in which the indemnification procedures applied to all indemnification claims and thus the procedures themselves provided the express limitation of the indemnification provision to third-party claims.[6] See *John Hancock Life Ins. Co. v. Abbott Labs., Inc.*, 183 F. Supp. 3d 277, 326 (D. Mass. 2016) (applying Illinois law and finding indemnification procedures that were applicable to all indemnification claims—including notice of the indemnified claim to indemnifying party, indemnifying party's right to participate in the defense of claim, and indemnifying party's right to approve settlement of the claim—"would not make sense if the indemnity provision was intended to cover claims between the parties"), reversed in part on other grounds, 863 F.3d 23 (1st Cir. 2017); *Allianz Global Corp. & Specialty Marine Ins. Co. v. Host Int'l, Inc.*, 2013 WL 1629437, at *6 (N.D. Ill. Apr. 16, 2013) (applying Illinois law and

---

[6] The provisions of Section 14.3 are also expressly incorporated into the first paragraph of Section 14.1(a) and into Section 14.2, but not into the second paragraph of Section 14.1(a), reasonably indicating that Section 14.3 does not apply to the second paragraph of Section 14.1(a).

concluding that "[t]he only reasonable interpretation" of the language in the indemnification provision of contract was that the parties agreed to indemnity for third-party claims only); *In re Quantum Chem. Lummus Crest*, 1993 WL 135449, at *2–3 (N.D. Ill. Apr. 29, 1993) (applying Illinois law and finding that, once the entirety of the indemnity provision in the contract was construed as a whole, the notice and assumption of defense language in that provision demonstrated that indemnification extended only to claims brought by third parties); *Open Kitchens*, 466 N.E.2d at 1315 (indemnity provision only applied to third-party claims where indemnification procedures only made sense in the third-party claim context).

The Court agrees with Plaintiff that this provision is structured consistently with how one would expect an indemnification procedure section in a contract where indemnification obligations include both first-party and third-party claims to be set out; there would be no need to define an indemnified claim as one involving third parties if all indemnified claims involve third parties. At best, this limitation in the definition of "indemnified claim" for Section 14.3 in connection with the absence of a third-party limitation in the second paragraph of Section 14.1 as outlined above creates an ambiguity as to what is really covered by the second paragraph. "Where the contract is ambiguous, 'the language is a question of fact which a [court] cannot properly determine on a motion to dismiss.'" *Victory Records, Inc. v. Kalnoky*, 2016 WL 3181706, at *2 (N.D. Ill. June 8, 2016) (quoting *Quake Constr., Inc. v. Am. Airlines, Inc.*, 565 N.E.2d 990, 994 (Ill. 1990)).

Defendant's similar arguments regarding the limitation of liability provision (Section 15) and the attorneys' fees provision (Section 17.12) also are unavailing. Section 15 includes (1) a waiver of consequential, special, indirect, incidental, punitive, or exemplary damages in connection with the Agreement, and (2) a direct damages cap limiting damages for claims

13

asserted against one party by the other party under the Agreement to five times the total fees paid or payable under the Agreement in the prior twenty-four months. [1-1, Exhibit A, § 15.] These limitations specifically do not apply to damages arising in connection with a party's indemnification obligations. [*Id*.] According to Defendant, because both of these liability limitations exclude from their scope claims for indemnification, if indemnification applies to Plaintiff's first-party claims, these provisions will never apply. Defendant also points to Section 17.12, which provides an award of attorneys' fees and expenses to the prevailing party in any action related to the Agreement. [1-1, Exhibit A, § 17.12.] Defendant argues that, because "Damages" as defined in Section 14 include attorneys' fees, construing Section 14 to include first-party claims would render Section 17.12 meaningless because Defendant would be responsible for Plaintiff's attorneys' fees and costs every time Plaintiff filed suit against Defendant. Therefore, Defendant is arguing that Plaintiff's interpretation of the Agreement would make these sections completely superfluous, in contravention of normal contract interpretation principles.

However, the Court cannot construe these provisions in this way: reading the second paragraph of Section 14.1(a) to include a first-party indemnification obligation on Defendant's part is consistent with the other provisions of the Agreement when the contract is construed as a whole. A plain reading of the second paragraph of Section 14.1(a) demonstrates that not every possible claim by Plaintiff against Defendant would fall under Section 14.1. Only claims in connection with (i) bodily harm, death and/or loss and damage to real and tangible personal property caused by the negligence or willful misconduct of Defendant, or (ii) Plaintiff's compliance with the requirements of applicable data protection laws following a breach by Defendant are covered by this indemnification obligation. Plaintiff plausibly argues that there

are other claims that Plaintiff could make against Defendant that would not be covered by Section 14.1(a)'s indemnification obligations, meaning these sections would not be rendered superfluous. The combination of the broad indemnification obligation in the second paragraph of Section 14.1(a), the limitations in Section 15, and the attorneys' fees provisions of Section 17.12 arguably creates an ambiguity as to reach of the second paragraph of Section 14.1(a). See *UIRC-GSA Holdings Inc. v. William Blair & Co., L.L.C.*, -- F. Supp. 3d --, 2017 WL 3706625, at *6–7 (N.D. Ill. Aug. 28, 2017) (refusing to dismiss claim for breach of contractual duty to indemnify a first-party claim because the indemnity provision's "broad language" was "inconsistent with the language in other provisions of the Agreement," making the contract ambiguous). As noted, ambiguous language in a contract is a question of fact not properly determined at the motion to dismiss stage. *Victory Records, Inc.*, 2016 WL 3181706, at *2.

Defendant's arguments point to some ambiguity in the contractual language of the Agreement, but they do not conclusively demonstrate that Defendant is not required to indemnify Plaintiff for its first-party claims under the second paragraph of Section 14.1(a) of the Agreement. Because Plaintiff has plausibly alleged that the Agreement requires Defendant to indemnify Plaintiff for its first-party claims of this kind, Defendant's motion to dismiss Count I of the Complaint is denied.

## IV. Conclusion

For the reasons explained above, Defendant's motion [16] is denied. This case remains set for status hearing on March 20, 2018 at 9:00 a.m.

Dated: December 29, 2017

Robert M. Dow, Jr.
United States District Judge

15